9   239
45   281

9   239
46   452

W. Stephens v. W. C. Graves.

The plaintiff, a resident of Louisiana, sued the defendant, a resident of Kentucky, to rescind the sale of slaves sold him by the agent of defendant, on account of redhibitory defects. The defendant signed an agreement to arbitrate the matters in dispute, but the arbitrators did not act.* *Held:* That it was not a proper case for the appointment of a curator, *ad hoc,* to represent the defendant.

APPEAL from the District Court of the Parish of East Baton Rouge, *Robertson,* J. *Dunn,* for plaintiff. *Lacey,* for defendant and appellant.

Slidell, C. J. (Voorhies, J., and Campbell, J., concurring.) The facts are correctly stated in the opinion of the District Judge, and we concur with him in the conclusions that this case was not one for the appointment of a curator *ad hoc.* See *Dupuy* v. *Hunt,* 2 Ann., 562. *Johnson* v. *McRae,* 3 Ann., 101.

We think there is no error in the judgment of the District Court, rescinding the appointment of a curator *ad hoc,* and dismissing the suit; and the judgment is therefore affirmed with costs.

Ogden, J., (with whom concurred Buchanan, J.,) dissenting. The sale from the defendant to the plaintiff having been made in Louisiana, and within the jurisdiction of the court, I think it was a proper case for the appointment of a curator *ad hoc,* to represent the defendant, who resides in Kentucky.

The rule, sanctioned by the more recent decisions on this subject, confines the power of appointing curators *ad hoc* to cases where there is something upon which the jurisdiction of the court can properly be based. In the case of *George* v. *Fitzgerald,* 12 L. R., 606, the rule was laid down more broadly than was necessary for the decision of that particular case, which, like this, was a redhibitory action against a defendant residing in another State, but the conclusion then arrived at, that in such a case, a curator *ad hoc* may be appointed to represent the absent defendant, is not at variance with any of the more recent decisions, and is not, as I think, in conflict with the decision in 2 Ann. R., 562, of *Dupuy* v. *Hunt.* Where the subject matter of the suit is the title to land, it is the constant practice to cite absent defendants as warrantors by the appointment of a curator *ad hoc.* Negroes are considered real estate, and where the object of the suit is the rescission of the sale of property of that kind on the ground of a vice inherent in the contract itself, and the property is within the jurisdiction of the court, there is the same reason for applying the rule to such a case as there would be in an action to rescind the sale of a tract of land.

The defendant in this case entered into an agreement, in writing, to submit the controversy to arbitrators who were to make a report, and within ten days file it in the office of the Clerk of the District Court of East Baton Rouge. He appeared afterwards, by counsel, before the arbitrators and objected to their proceedings on the ground that he had not been personally notified, and when the suit was instituted appeared again, by counsel, and excepted to the jurisdiction of the Court, on the ground that he resided out of the State, and that the court was without authority to appoint a curator *ad hoc* to represent him. I am of opinion the court below erred in sustaining the exception.

*Dunn,* for a re-hearing:

1st. A dismissal of the conservatory process did not carry with it a dismissal

---

* The facts are taken from the opinion of the District Judge.

STEVENS
v.
GRAVES.

of the action. Peremptory exceptions tend to the dismissal of the action, but dilatory exceptions only retard its progress.

At page 6 of the Record, it will be seen that the petitioner prayed to cite the defendant, in *propria persona*, to answer, as well as through a curator *ad hoc* and agent.

As *Graves* frequently visits Baton Rouge, the plaintiff should have the benefit of his present action to make service upon him. The petition was delivered to the Clerk, regularly filed, and it was the duty of the Clerk to make out a copy to be served on defendant with a citation annexed, as prescribed by Code of Practice, 176 and 178 Arts. This he cannot do if his action remains dismissed, and he would be obliged to commence *de novo*. The dismissal of the action is error.

2d. It was error to set aside the process of attachment. The plaintiff was certainly entitled to it, and a dismissal of the action as to *McHattan*, a garnishee, should not deprive the plaintiff of the benefit of the attachment, if by vigilance he should be so fortunate as to find property, rights or credits belonging to the defendant.

*McHattan* disclaimed being agent, denied owing the defendant, and prayed to be discharged. That being allowed, still the attachment process should remain undisturbed except as to the garnishment.

The defendant, *Graves*, contested the authority of the court to appoint a curator *ad hoc*, to represent him. In such case, if the law be in his favor, then the appointment of the curator would be rescinded, and the petition and attachment remain undisturbed. The defendant could not reach these without an appearance and issue, in which he would fail, and which would be a waiver of jurisdiction.

3d. At page 14 of the Record, it will be seen that the interest of the defendant in the slave *Sarah* was attached.

If *Graves* had an interest in that slave it was the right of plaintiff to attach it, and whether he had or not, was a question to be tried. The dismissal of the attachment deprives him of that right.

4th. Every government has a right to make laws protecting the citizen against the frauds and bad faith of non-residents in the sale of slaves made within the State and within the jurisdiction of the courts, and are equally binding on non-residents, who contract, knowing their existence, and will have full force and effect in every other government. The mother shall not be sold from the child; a disease manifesting itself within 15 days, shall be evidence of its existence on the day of sale; and such laws, are made for the protection of our own citizens and purchasers of slaves. The right cannot be controverted.

A right without an adequate remedy is a mere shadow; and I submit to your honors, if it were not competent to provide a remedy to cancel contracts made within the State, and whether judgments rendered contradictorily with curators *ad hoc* would not be respected by the sister States?

At the time the defendant sold the slaves, he was a Kentuckian; he sold them in this State, and to a citizen of the State; the contract must be governed by the laws of the State. It was a part of the contract that if redhibitory vices or defects manifested themselves, that then the slaves were to be returned and the price paid back.

How were the slaves to be returned? Was it the duty of the purchaser to take them to Kentucky?

The moment these slaves touched our soil, they ceased to be personal property. A suit to cancel the sale is therefore not like a personal action that follows the person, or actions relating to personal property.

The Article in the Civil Code provides for the appointment of curators *ad hoc* in certain cases, and is this not a case?

Not only was the contract made in Louisiana; not only are slaves regarded as real estate, but the definition and effect of the redhibitory action, indicating that vendors of slaves have a suspensive revisionary interest in the property sold, that it would seem the law-maker intended to embrace such cases, and in this conclusion we are supported by the repeated decisions of the Supreme Court for years past, and without any change in the Legislative enactments. In fact, the law and practice was not seriously questioned by the courts until recently.

Suppose that the plaintiff had sold these slaves, and that he was sued on account of defect, would he not have a right to call his vendor in warranty and

pray the appointment of a curator *ad hoc?* Such is the practice. There would be a suit pending in which the absentee was interested, and the right would be unquestioned.

. The plaintiff, then, can sell the slaves, stand a suit, and thereby give jurisdiction to the court over the absentee. It seems to be a curious rule that he cannot sue the absentee unless he is himself sued.

5th. In making an agreement to arbitrate, did not the defendant give jurisdiction? To test it, I insist that the agreement was equivalent to citation, and would be so ruled, for the purpose of interrupting prescription.

For this reason, the law authorizes the parties to make such agreements. If a defendant accept service by endorsing it on a petition, it as much interrupts prescription as if served with citation. The agreement, in this case, therefore, is not without legal effect, and surely, it interrupted prescription, because it was the commencement of a legal controversy which has never been voluntarily waived or dismissed by plaintiff, and I submit to your honors if that agreement is not evidence of consent, conferring jurisdiction. .

Re-hearing refused.